ANDERSON, J.,
delivered the opinion of the court.
The plaintiffs in the original bill, had *530 obtained a decree against Fletcher H. Mays in the suit of Kyle, guardian, v. Kyle’s heirs, in the circuit court of Botetourt county, for certain sums of money due them severally, payable out of the proceeds of certain real estate, which said Mays,’as special commissioner, had sold, and the proceeds of sale collected, under a decree of the court in said cause, which he had failed to pay over to them; for the payment of which Daniel P. Ewing was bound as his surety, in the bond which he gave as such special commissioner; and they filed their bill in chancery, in the county court of Botetourt, against the said Mays, and his assignee in bankruptcy (alleging that he was a bankrupt), and the heirs and representatives of Daniel P. Ewing, who was dead, and others, seeking the recovery of their several judgments, and that the real estate of which the said *Daniel P. Ewing died seized, might be subjected to their payment; if the court should be satisfied that there were not personal assets, as they virtually alleged, out of which they could be satisfied.
This court is of opinion that this suit, and the suit aforesaid of Kyle, guardian, v. Kyle’s heirs, were for different and distinct objects, and that the plaintiffs were not restricted, in seeking their relief, to the latter; if they could have proceeded in that suit. And having brought their suit in the county court for that purpose, which had jurisdiction of the case, the court is further of opinion, that it was competent for other creditors of Ewing, to come in by petition, and ask to be made parties plaintiff in said cause, on the usual terms, and to be allowed to participate in the results thereof; and that proper enquiry be made for all outstanding, unsatisfied debts of decedent’s estate, and of the real and personal assets, and that their debts may be satisfied out of the same.
The court accordingly allowed Ellett & Drewry, and H. & I. Guggenheimer, to file their several petitions for that purpose, which were filed on the 12th of May, 1873. On the 15th day of July following, H. C. Douthat, the administrator de bonis non of Daniel P. Ewing, deceased, filed his demurrer and answer to the bill of plaintiffs, and on the same day B. M. Allen was appointed guardian ad litem for Cora Bell Ewing, and Anna James Ewing, infant heirs of D. P. Ewing, deceased; and the cause was referred to the master to take an account of all liens on the real estate of Daniel P. Ewing, deceased; also the yearly rental value of said estate, and of any other matters deemed pertinent by himself, or required by either party; and to report to the next term of the court. And the cause was removed to the circuit court of said county. The term “all liens,” in the said *decretal order, must be taken to mean all debts, which may-bind the real estate.
Lucy Ferguson, one of the plaintiffs, having died since the filing of the will, the cause was revived in the name, of W. B. •Simmons her administrator.
On the 24th of March, 1874, the cause was heard by the circuit court, on the demurrer to the bill, which the court sustained; and gave the plaintiffs leave to amend. And at the May rules, 1874, an amended bill was filed in the names of Ellett & Drewry, partners, and H. & I. Guggenheimer, partners, W. B. Simmons, administrator of Lucy Ferguson, deceased, and Isabella Rowland.
It is contended by appellants that the paper purporting to be an amended bill is not an amended bill, because it is a departure from the original bill, and makes a new case, both in respect of parties, and in the relief sought. And that the court erred when it sustained the demurrer, in giving leave to amend, instead of dismissing the plaintiffs’ bill; and that the amended bill should have been struck from the file, on motion. This we think comprises in substance the position of the appellees.
The court is of opinion, that although the original bill was not filed as a creditor’s bill, the county court did not err in the order of 12th of May, 1873, allowing Ellett & Drew-ry, and H. & I. Guggenheimer, on their motion, to file their petitions, and to be made co-plaintiffs with the complainants: and on the 15th of July following, in the reference to a master, to take an account of all liens on the real estate of Daniel P. Ewing, deceased. In Stephenson v. Taverners, 9 Gratt. 398, “A creditor (it was held), has a right to bring a suit for his claim; but he ought to bring it for himself and 'all other creditors.” The plaintiffs, upon that authority had a right to bring the suit for their claims, *but they ought to have brought it not only for themselves,, but for all other creditors. And not having done so, the other creditors had a right, on petition to come in and be made co-plaintiffs with them. And in the same case, it is held, when in a suit for the administration of assets, (which is this case;-for that purpose both the personal representative, and the heirs, were made defendants); a- decree is made for an account of outstanding claims against the estate, it ■ operates a suspension of all other pending suits of creditors; who must come in under the decree, which is considered a decree in favor of all the creditors.” So that if it comes to the knowledge of the court that there are other claims against the estate outstanding, it would be the duty of the court to decree an account, and all creditors must come in; and such decree even suspends all other pending suits of creditors, and they must come in and prove their claims under such decree, though they have a suit of their own pending for their recovery. In Harvey’s adm’r v. Steptoe’s adm’r, 17 Gratt. 289, it was held that where there was a decree directing a commissioner to take an account of all outstanding and unsatisfied debts, the court took upon itself the administration of the assets, and would have restrained parties afterwards from proceeding by separate suits. In the recent case of Kent’s adm’r v. Cloyd’s adm’r, 30 Gratt. 555, the same doctrine was enunciated, and it was held, that “the same result follows when the heir or devisee is made a party with a view to a sale of the real estate.”
*531 From the time the decree for an account was rendered in this case, it was no longer a separate creditor’s suit, but was a general creditor’s suit; and the petitioners, even from the date of the order of the court making them co-complainants with the plaintiffs, were as essentially plaintiffs as if their names had been ^inserted in the original bill as plaintiffs, when it was filed. But if this were not so, “it is the settled practice of courts of equity as was held by this court in Belton v. Apper-son, 26 Graft. 207, Judge Staples delivering the opinion of the court, to allow an amendment of the bill by the introduction of new parties, plaintiffs or defendants, were necessary to the ends of justice, or to prevent further litigation. As a general rule this is not a matter of course, but is discretionary with the court.” If it was right in the circuit court to sustain the demurrer, it was surely a proper case for leave to amend.
But this court does not perceive any good grounds for the demurrer, in the reasons or causes assigned by the demurrant. To all of them which have not been already sufficiently answered except the plea of the statute of limitations, we think the statute is an answer. It is found in ch. 175, p. 1126 of the Code, § 2, and is as follows: “A creditor before obtaining a judgment or decree for his claim, may institute any suit to avoid a gift, conveyance, assignment or transfer of, or charge upon, the estate of his debtor, which he might institute after obtaining such judgment or decree; and he may in such suit have all the relief in respect to said estate which he would be entitled to after obtaining a judgment or decree for the claim winch he may be entitled to recover.”
And now as to the bar by the statute of limitations. The right of action could not have accrued against Ewing before the date of his bond; which is the 26th of May, 1858. And if the filing of the amended bill, which was at the May rules, 1874, could be regarded as the commencement of the suit, the estate of D. P. Ewing would not be protected by the statute. But by the express authority of Harvey’s adm’r v. Steotoe’s adm’r, supra 305, the statute of limitation ceased to *run against them from the date of the decree for an account, to-wit. the 15th of July, 1873.
We think it is by no means clear, that the plaintiffs, including the petitioners, could not have maintained their case upon the original bill; but waiving that, we do not think that the amended bill is a departure from the original bill, and makes a new case in respect of parties, which has already been sufficiently shown as to adding parties, and we think it did not make a new case by dropping two of the plaintiffs. If they had been paid as was suggested at the bar, or if they had concluded to withdraw from the suit for any cause, they had a right to do so, with the assent or acquiescence of their co-plaintiffs. And it does not appear that the defendants were prejudiced thereby; and there was no such connection between their claims and the remaining plaintiffs as was incompatible with their severence. But by withdrawing their claims from the administration of the fund by the court, they were excluded thereafter from a participation in it; which could not prejudice the personal representative or heirs of Daniel Ewing.
The court is also of opinion, that whilst the amended bill amplifies the statement of the case, and presents it with greater precision and fullness, and with more directness, and with some averments, which were not expressed in the original bill, it does not make a new case from thal which was made by the original bill and the petitions. The conclusion is. that the court did not err, in overruling the defendants’ motion to strike it from the file.
The claim of Ellett & Drewry was not barred by the lapse of five years after the 1st of January, 1869. The institution of their proceeding if not to be regarded as of the date of the filing of their petitions, would date, *as has already been shown, from the decree directing an account — which was July. 1873.
The claim of Ellett & Drewry, though “a mere legal demand, and never asserted and established by a judgment in a court of law,” we have shown was cognizable in a court of equity, to prevent a transfer or charge upon his debtor’s estafe, and to obtain all the relief he would be entitled to, after obtaining a judgment or decree.
The court is further of opinion, that, receiving the testimony of Riddlebarger, the evidence falls short of proving that H. & I. Guggenheimer’s claim has been satisfied.
But we have more doubt about the third assignment of error in the petition of appellants, that infants were not properly represented before the court by guardian ad li-tem, when the decree was made for the sale of their land. It appears from Ihe record that Charles Bayne, their statutory guardian, was in that capacity before the court, and his joint answer with others to the original bill, in his own right, and as guardian of Cora Bell Ewing, and Anna J. Ewing, infant heirs of Daniel P. Ewing, deceased, was filed by leave of the court on the 12th of May, 1873. the same day that the petitions of the creditors before mentioned, were filed. His answer was sworn to four days before — i. e., the 8th of May — and consequently before their claims were asserted; and if does not appear, that he had ever heard of them at the time his answer was prepared.
The joint answer of Charles Bayne and Mollie his wife to the amended bill is filed, but not in his character as guardian of the infant heirs. A guardian ad litem was appointed, as we have seen, for the infant heirs in the original bill, on the 15th of July. 1873. It does not appear from the printed record, that they *answered by him. But the appellees .produced a copy of their answer by their said guardian ad litem, certified by the clerk as a true copy of an answer found among the papers in' said cause, and which was among the files when the transcript was made by him to be presented to this court, and he presumes the *532 'same was filed at the date of the order appointing the guardian ad litem. This paper was presented the day after the argument was commenced, by one of the appellees’ counsel, who was not present on the first day of the argument, and in whose custody it was, and the appellants’ counsel objected to its being read by the court as a part of the record. The printed document relied on by the appellants’ counsel, is not certified by the clerk to be a full transcript of the record, but of only so much' of it “as was desired by defendants, counsel.”
The court has deemed it proper under the circumstances/ to look into said paper, but there is nothing upon its face or in the record as exhibited to show that it. was ever regularly filed, further than merely to put it with the papers; and when that was done, does not appear, except by the supposition of the clerk. It does not appear that it was ever brought to the notice of the court, and not being referred to by any of the decrees, it does not appear that it was considered by the court, or that either of the infant heirs was before it, by her guardian ad litem, either upon the original, or amended bills. They were the parties most largely interested in the decision, and though their answering by guardian ad litem, may be a mere matter of form, the uniform practice in courts of chancery has strictly required it. An infant cannot appear by attorney. When the statutory guardian of the infant is before the court and has answered, and the record shows that his rights have been carefully investigated and maintained, there might be some relaxation of the rule.
*In this case the court is of opinion, that the record does not show satisfactorily, that the rights of those infant heirs have been so investigated and protected. Sundry exceptions were made by the counsel of Bayne and wife and the heirs of Ewing to the report of Commissioner God-win, filed March 1st, 1875. In the third exception, the exceptant states, that the answers filed distinctly state that Mr. Mays had real estate at the time of the rendition .of the decrees and judgments set up, amply sufficient to satisfy them, and it would seem to be -grossly inequitable to proceed upon the patrimony of the infant children of W. P.' Ewing, who was a mere surety, “until the property of the principal debtor E. H. Mays, is exhausted.” It is evident that F. H. Mays was the owner of numerous tracts of land, and large personal property, which he says in his answer, was unincumbered, which were ample to satisfy the decrees and judgments in this suit. The answer of the as-signee affirms that there were judgment liens before the war more than sufficient to consume all the assets of the estate. But those judgment liens don’t attach to the personal oroperty. He says these judgments have been regularly reported to the bankrupt court, and he presumes that the whole fund will be applied to them. The record of that court is not before us, and we cannot know what was done by it. But it appears that F. H. Mays sold one of his tracts of land to Henry Ripse for $5,000 — in 1863 or ’63, which he. conveyed, to him in 1865, which may be primarily liable for these decrees and judgments, before the land he sold to W. P. Ewing in 1860, and conveyed to his heirs at law in 1863. It does not appear that any satisfactory inquiry has been directed or made into that matter, though it was virtually brought to the attention of the court, by the exception of the counsel of Bayne and wife and the heirs of Ewing, to the ^report of the commissioner before referred to. Such enquiry may avail nothing for the infant heirs of Ewing upon investigation. But such would be the hardship and injustice of throwing this burden upon their inheritance as shown by the record of this case, if it appears probable, that others may be primarily liable in equity, there should be a thorough and searching en- | quiry made, before the burden is thrown | upon them. And it not appearing that they have been regularly before the court and made their defence by guardian ad litem, the case must go back, that they may appear and answer by guardian ad litem, and that thorough enquiry may be made as to the matters referred to; and they will be allowed to make any other defences which may be deemed proper, and equitable. The court is of opinion for the foregoing reasons to reverse the decree, and remand the cause to the circuit court of Botetourt.
The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decrees aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the circuit court erred in proceeding to decree against the infant heirs of Daniel P. Ewing, deceased, without requiring an answer from the guardian ad litem of said infants, if not appearing by the record that any such answer was in fact filed. The said circuit court ought also to have caused an en-quiry to be made by one of its commissioners, whether any and what real estate of F. H. Mays was and is subject to the lien of judgments recovered against him by the parties to this suit, or either of them, and especially whether the tract of *land conveyed by him to Henry Lipse is not primarily liable to such liens. It is, therefore, decreed and ordered, that for the errors aforesaid the decrees appealed from be reversed and annulled, and that the ap-pellees pa3r to the appellants, the heirs of Daniel P. Ewing, deceased, their costs by them expended in the prosecution of their appeal aforesaid here.
And the cause is remanded to the said circuit court, with instructions to have a proper answer filed in behalf of said heirs, if they have not retained their majority, or to require them to answer if they have attained their majority, and also to have proper enquiries made with respect to any real estate owned by said Mays, liable to the lien of the judgments aforesaid, and to take further proceedings in conformity with this decree and the opinion of this court.
*533 All of which, on motion of the appellees by their counsel, is ordered to be forthwith certified to the said circuit court of Bote-tourt county.
Decree reversed.